UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| WILLIAM PELLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 5:22-CV-00239-MAS |
| | ) |
| MARTIN O'MALLEY, | ) |
| *Commissioner of SSA*, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff William Pelley ("Pelley") appeals the Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court considers the parties' competing Motions for Summary Judgment. [DE 11; DE 13]. For the reasons discussed below, the Court finds that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and that the Commissioner's final decision is hereby **AFFIRMED**.

**I.   FACTS AND PROCEDURAL HISTORY**

Plaintiff William Pelley ("Pelley") filed an application for DIB on February 7, 2020. [Administrative Transcript[1] ("TR") at 176]. Pelley alleges his disability began

---

[1] The Administrative Transcript ("TR") is docketed at DE 5-1–12. The Court shall utilize the pagination generated by the Commissioner when referencing the transcript.

1

on January 16, 2020. [TR at 229]. His claims were denied initially on April 8, 2020, and upon reconsideration on August 2, 2020. ALJ Greg Holsclaw conducted a telephone hearing on May 21, 2021. Pelley and an impartial vocational expert ("VE") appeared and testified. Ultimately, ALJ Holsclaw issued an unfavorable decision on June 30, 2021. [TR at 15].

On the alleged date that his disability began, he was 45 years old. [TR at 176]. Pelley alleged disability due to the complications of Meniere's disease causing him to experience instances of vertigo, dizziness, and loss of balance. In conducting the residual functioning capacity ("RFC") analysis, the ALJ determined that Pelley had medically determinable impairments that could cause his alleged symptoms, but that his symptoms were not entirely consistent with other evidence, both medical and non-medical.

The ALJ ultimately determined that Pelley had the RFC to perform sedentary work as defined by 20 C.F.R. § 404. 1567(a), with the following limitations:

> [C]laimant could do no lifting/carrying more than 10 pounds occasionally and 10 pound frequently. He could do no standing/walking more than two hours out of an eight-hour day and for no more than 45 minutes at one time. He could do no sitting more than six hours out of an eight-hour day. The claimant could do unlimited pushing/pulling up to the exertional limitations, no more than frequent balancing, stooping, kneeling, crouching, crawling or climbing ramps or stairs but no climbing ladders, ropes or scaffolds. The claimant could do no work in sound environments that are more than moderately loud (with the term "moderate" used here as defined in the Selected Characteristics of Occupations); no work in areas of concentrated full body vibration; no work around dangerous, moving machinery or unprotected heights.

[TR at 18]. Based on his RFC, the ALJ determined Pelley was not disabled and there was work in the national economy he could perform despite his limitations.

## II. STANDARD OF REVIEW

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decisionmakers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire record in search for facts supporting under-developed arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake

3

an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the ALJ's five-step sequential analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at § 404.1520(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at § 404.1520(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work. *Id.* at § 404.1520(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based

4

on RFC, age, education, and work experience. *Id.* at § 404.1520(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there. *Id.* at § 404.1520(a)(4).

### III. ANALYSIS

Pelley argues that the ALJ's decision is not supported by substantial evidence because his findings are not consistent with the uncontradicted medical and non-medical evidence establishing the frequency and severity of his Meniere's disease symptoms. [DE 11]. Specifically, Pelley contends that the ALJ ignored evidence showing how much work he missed due to his medically determinable impairments and that, as a result, the RFC does not account for the amount of work he would have to miss when experiencing bouts of vertigo or dizziness. [DE 11-1, PageID# 562–63].

The Commissioner contends that the Court should affirm the ALJ's decision because the ALJ's RFC is supported by substantial evidence. [DE 13, PageID# 571]. While the ALJ did not account for absenteeism in the RFC, the Commissioner maintains that the ALJ was not obliged to do so based on the evidence in the record. He argues that Pelley failed to prove a "recurrent need to miss work or take unscheduled breaks," and that the ALJ "reasonably concluded that [Pelley] failed to show he was more limited than the RFC specified." [DE 13, PageID# 571].

Indeed, the ALJ did not formulate an RFC that accounted for missed work or off-task time. Social security regulations emphasize that the SSA will assess an individual's RFC based on all relevant medical and other evidence in the case record, including the effects of symptoms, signs, and laboratory findings that do not meet or

5

equal the criteria of a listed impairment but still have a significant impact on the individual's functional abilities. C.F.R. § 404.1545(e). This includes non-exertional limitations, such as difficulties in maintaining concentration, persistence, or pace, which could result in off-task behavior or absences from work. § 404.1569a(c). SSR 16-3p, 2016 SSR LEXIS 4 governs the evaluation of symptoms in Title II disability claims when determining whether a claimant can return to work. SSR 16-3p, 2016 SSR LEXIS 4, 82 Fed. Reg. 49,462 (Oct. 25, 2017). A two-step inquiry guides an ALJ's evaluation of a claimant's symptoms. *Id.* at 49,463-64. First, the ALJ must determine whether an "underlying medically determinable physical or mental impairment . . . could reasonably be expected to produce an individual's symptoms[.]" *Id.* at 49,463. Second, he must examine the "intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* During the second step, the ALJ must "consider all the evidence presented" 20 C.F.R. § 404.1529(a), including information about [the claimant's] prior work record, [his] statements about [his] other symptoms, evidence submitted by [his] medical sources, and observations by . . . other persons[.]" *Id.* at § 404.1529(c)(3) . Generally, a reviewing court may only disturb these findings for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011).

Here, the ALJ's determination is supported by substantial evidence. In his analysis, the ALJ determined that while Pelley did have the severe impairments of Meniere's disease, tinnitus/hearing loss, and obesity, those impairments did not rise

to the level of severity required to qualify as a disabling impairment under 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. [TR at 17–18]. Yet, due to the severity of Pelley's impairments, the ALJ determined that Pelley could only perform sedentary work with additional limitations. In deducing the limitations, the ALJ conducted an analysis that chronicled the objective medical evidence and weighed that evidence against the Pelley's self-reported limitations and other non-medical evidence when formulating Pelley's RFC. [TR at 23–24]. Ultimately, however, The ALJ found that Pelley's "allegation of disability is simply disproportionate to what the record can reasonably support." [TR at 23]. For instance, the ALJ noted that "objective medical evidence indicates that [Pelley] has symptoms that have worsened" over time, but evidence also indicates his symptoms "have not clearly risen to the level or frequency alleged." [TR at 23–24]. Thus, the ALJ accounted for Pelley's medically determinable impairments by formulating an RFC reducing him to sedentary work, "reflecting a significant reduction on standing or walking because of the alleged symptoms of dizziness or disequilibrium." [TR at 24]. The RFC also has a limitation of "no more than moderate noise environments" to account for the result of Pelley's audiograms. [TR at 24]. Finally, the ALJ determined that "[f]urther reductions are clearly not supported." [TR at 24].

Pelley complains that the sedentary work limitation imposed by the ALJ does not adequately account for his reported symptomology and that Pelley even testified that his symptoms persist even when he is sitting down. [DE 11-1, PageID# 563]; [TR at 62]. Pelley also points to several occurrences where he had to take a temporary

7

leave of absence from work due to the alleged worsening of his condition and provides his attendance records documenting his missed work. For instance, he detailed his "struggle with attendance" do to "vertigo and Menieres attacks" that led to him using six weeks of vacation time in the first year of his employment at Hitachi, followed by FMLA leave. [TR at 221]. But none of this constitutes medical evidence that his medically determinable impairments necessitate an RFC that factors in missed work. However, the ALJ articulated that he found that Pelley's self-reported intensity and severity of his symptoms did not support the imposition of any additional limitations. Under the regulations, the ALJ's assessment suffices and the ALJ was not required to analyze records and evidence that did not support additional limitations related to absenteeism. *See Wendy D. H. v. Comm'r of the Soc. Sec. Admin.*, No. 3:20-cv-387, 2022 U.S. Dist. LEXIS 37744, 2022 WL 621433, at *3 (S.D. Ohio Mar. 3, 2022) (finding that treatment records for disabling impairment do not explain how impairment "impact her functioning to the point that they would cause her to suffer from the work-preclusive limitations" such as absenteeism).

Moreover, an ALJ is not required to opine about limitations in an RFC when the Court has already found opinions incredible or unpersuasive. *Cruz v. Comm'r of Soc. Sec.*, No. 1:23-CV-00245-CEH, 2024 U.S. Dist. LEXIS 2401, at *41-42 (N.D. Ohio Jan. 5, 2024); *see also Noe v. Kijakazi*, No. 5:22-CV-00144-EBA, 2023 U.S. Dist. LEXIS 36670, at *12-14 (E.D. Ky. Mar. 6, 2023). Accordingly, ALJ did not err when he did not factor in absenteeism into Pelley's RFC because he already determined that medical and non-medical evidence did not support the alleged intensity and

8

severity of the symptoms caused by Pelley's medically determinable impairments. The Court does not see any need to disturb the ALJ's determination given that Pelley does not point to, nor does the record reflect, any medical evidence that suggests that his disabling symptoms require Pelley to miss work. *Jacqueline J. v. Comm'r of Soc. Sec.*, No. 3:22-cv-293, 2024 U.S. Dist. LEXIS 15549, at *13 (S.D. Ohio Jan. 27, 2024) (finding ALJ's RFC to be supported by substantial evidence because "no medical source of record opined that plaintiff's impairments" would result in plaintiff's alleged off-task time or absenteeism); *see also Wyatt v. Comm'r of Soc. Sec.*, No. 22-5408, 2023 U.S. App. LEXIS 4593, at *8 (6th Cir. Feb. 24, 2023) (affirming district court's finding that ALJ decision was supported by substantial evidence when there was "no medical opinion in the record stating that [claimant's impairments] would cause excessive absenteeism"); *Turner v. Comm'r of Soc. Sec.*, No. 20-6422, 2021 U.S. App. LEXIS 29160, at *6 (6th Cir. Sep. 24, 2021) (same).

## IV. <u>CONCLUSION</u>

William Pelley appealed the Commissioner's final decision finding that he can perform sedentary work. While he contends that the ALJ's finding was not supported by substantial evidence due to the RFC's omission of any limitation relating to absenteeism, the ALJ's omission was not error, and the decision was ultimately supported by substantial evidence. Having fully considered the matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that:

1. The final decision of the Commissioner is hereby **AFFIRMED**;

2. Defendant's Motion for Summary Judgment is **GRANTED**; and

3. Plaintiff's Motion for Summary Judgment is **DENIED**.

A separate judgment will follow.

Entered this 6th of March, 2024.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY